NATIONAL UNION OF POLICE OFFICERS, LOCAL 502-M, SEIU,
AFL-CIO v WAYNE COUNTY BOARD OF COMMISSIONERS

Docket No. 65567. Submitted July 26, 1983, at Detroit.—Decided
February 7, 1984. Leave to appeal applied for.

The National Union of Police Officers, Local 502-M, SEIU, AFL-
CIO is the recognized exclusive bargaining representative of all
nonsupervisory uniformed employees of the Wayne County
Sheriff's Department. The county and the union entered into a
number of collective-bargaining agreements over the years. One
of the agreements carried an expiration date of June 30, 1977.
The parties were unable to agree on the terms of a new
agreement by that expiration date, so they submitted the
dispute to a compulsory arbitration panel. The panel issued its
award on June 30, 1978, forming the basis for a new collective-
bargaining agreement. The panel's award included a provision
granting cost of living allowance benefits to certain sheriff's
department retirees. On July 27, 1978, the union filed a com-
plaint for mandamus against the Wayne County Board of
Commissioners in Wayne Circuit Court seeking an order enforc-
ing the June 30, 1978, arbitration award. A show cause hearing
was held and the court, Thomas J. Roumell, J., issued a writ of
mandamus directing the county to comply with the arbitration
award. The county then decided to challenge the arbitration
award. A profusion of litigation followed. On April 1, 1981, all
appeals by the county had been exhausted and the arbitration
award remained intact. The county failed to comply with that
portion of the award dealing with the payment of a cost of
living allowance to retirees. In the meantime, the parties were
faced with the task of negotiating changes in the 1978 collec-
tive-bargaining agreement which resulted from the arbitration
award. The collective-bargaining agreement was to remain in
effect through November 30, 1979, and thereafter for consecu-
tive yearly periods unless notice were given by either of the
parties of its desire to modify, amend, or terminate the agree-
ment. Such notice was required to be given in writing by a
party at least 60 days prior to the November 30 anniversary

REFERENCE FOR POINTS IN HEADNOTE
48A Am Jur 2d, Labor and Labor Relations §§ 1914-1918.

date. On September 25, 1981, the county sent a letter to the union terminating the agreement as of December 1, 1981. The county, earlier in 1981, in other disputes between the parties had claimed that the 1978 contract had expired on November 30, 1979. An arbitrator rejected that claim, and the union sued for enforcement of the arbitrator's award. The Wayne Circuit Court, Harvey W. Moes, J., refused to enforce that award but found that the contract had survived the November 30, 1979, date. On October 21, 1981, the parties commenced arbitration hearings to resolve the remaining disputes between the parties concerning changes in the collective-bargaining agreement which resulted from the 1978 arbitration award. The arbitration panel issued its award in March, 1982. The arbitration award concluded that the arbitration panel lacked jurisdiction to grant cost of living allowance benefits to retirees. The union filed a motion in Wayne Circuit Court seeking to compel the county to comply with its obligation under the 1978 arbitration award to pay cost of living benefits to retirees. Hearings were held and the court, Thomas J. Roumell, J., determined that the county should pay all past members of the union the cost of living payments due them under the terms of the 1978 arbitration award from July 1, 1977, until December 1, 1981, at which time the county effectively terminated the 1978 contract by its written notice of September 25, 1981. The county appeals. The issue on appeal is whether the court correctly ruled that the county's obligations to maintain the cost of living payments to retirees extended after the November 30, 1979, date until December 1, 1981. *Held:*

1. The trial court properly considered the language of the 1978 contract, the actions of the parties, and the evidence presented in finding that the agreement did not terminate until the county provided notice of termination in September of 1981. The judgment of the trial court is affirmed.

2. The trial court was not required to consider the 1982 arbitration award in resolving this dispute. The subsequent resolution of the issue of whether or not the county had a duty to bargain on the issue of cost of living allowance benefits for retirees pursuant to the 1982 arbitration award has no effect on the trial court's determination of the issue herein.

Affirmed.

CONTRACTS — COLLECTIVE BARGAINING — PUBLIC EMPLOYEES — TER-
    MINATION OF CONTRACT — NOTICE.

A collective-bargaining contract between a governmental unit and a group of public employees which contained a provision

that the contract would remain in force through November 30, 1979, and for consecutive yearly periods thereafter unless written notice of a desire to modify, amend, or terminate the contract was given by either of the parties at least 60 days prior to the November 30 anniversary date was not terminated by an attempt of one of the parties to negotiate a new contract where no written notice of a desire to modify, amend, or terminate was given.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *George H. Kruszewski*), for plaintiff.

*Edward L. Douglas,* Acting Corporation Counsel, County of Wayne, *Rheo C. Marchand,* Principal Attorney, and *N. McKinley Tounsel,* Assistant Corporation Counsel, for defendant.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and R. LAMB,* JJ.

PER CURIAM. Defendant appeals as of right from a judgment of Wayne Circuit Court Judge Thomas Roumell ordering it to pay COLA benefits to certain Wayne County Sheriff's Department retirees for the period of July 1, 1977, through December 1, 1981.

Judge Roumell's order was issued as a result of a show cause hearing which culminated five years of litigation over the issue of whether the county was bound by an arbitration award (the Haber Award), pursuant to MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.* (1969 PA 312), which awarded COLA benefits to certain sheriff's department retirees.

At the hearing, the county conceded its liability for COLA payments to the retirees of plaintiff Local 502-M, but contested the length of the con-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tract and, hence, the period for which COLA payments were owed. It also challenged the status of certain "retirees" whom the plaintiff claimed were entitled to COLA benefits. The matter of the identity of retirees was not appealed by defendant. However, the parties could not agree as to the length of the contract under which the retirees were entitled to COLA benefits.

The primary issue on appeal is whether the trial court's determination that the terms of the Haber Award obligated the county to pay COLA benefits to Local 502-M retirees through December of 1981, as opposed to through November 30, 1979, was correct.

The contested provision of the contract states:

"DURATION OF AGREEMENT

"This Agreement shall be effective July 1, 1977 and shall remain in full force and effect through November 30, 1979. Wages (including overtime, but excluding the new triple time rate and differential pay), dental insurance, cost of living allowance, and mileage shall be retroactive to July 1, 1977. The uniform allowance provision is retroactive to March 1, 1978. The provisions for Corporal; Senior Detective and the new specialty pay are to be effective July 1, 1978. Other financial provisions of the contract shall be effective July 1, 1978, along with sections dealing with hours and conditions of employment.

"*This Agreement shall continue in effect for consecutive yearly periods after November 30, 1979, unless notice is given, in writing, by either the Union or the Employer to the other party at least sixty (60) days prior to November 30, 1979, or any anniversary date thereafter, of its desire to modify, amend, or terminate this Agreement.*

"*If such notice is given, this Agreement shall be open to modification, amendment, or termination, as such notice may indicate, on December 1, 1979, or the subse-*

*quent anniversary date, as the case may be."* (Emphasis supplied.)

At the show cause hearing, defendant presented evidence that plaintiff union attempted to negotiate a new contract prior to November 30, 1979, the contract's originally scheduled expiration date. On this basis, defendant argues that the contract was effectively terminated on its originally scheduled expiration date.

Plaintiff presented evidence that it did not receive written notice of termination until September 25, 1981. Plaintiff argued that the contract, therefore, did not expire until December 1, 1981. The trial court agreed with plaintiff's reading of the contract's "Duration of Agreement" clause and awarded COLA benefits for a contract period ending December 1, 1981.

We first note that the cases relied upon on appeal by both parties involve the interpretation of termination or modification clauses in labor contracts under the NLRA, and involve relationships between private unions and private employers which implicate employees' statutory rights to strike. By contrast, the "Duration of Agreement" clause in the contract in the case at bar must be decided with reference to public employees' rights to bargain collectively under PERA.

In particular, the contested clause in the case at bar is part of a contract that resulted from compulsory arbitration under 1969 PA 312, MCL 423.240; MSA 17.455(40), which states:

"Sec. 10. A majority decision of the arbitration panel, if supported by competent, material, and substantial evidence on the whole record, shall be final and binding upon the parties, and may be enforced, at the instance of either party or of the arbitration panel in the circuit

court for the county in which the dispute arose or in which a majority of the affected employees reside. The commencement of a new municipal fiscal year after the initiation of arbitration procedures under this act, but before the arbitration decision, or its enforcement, shall not be deemed to render a dispute moot, or to otherwise impair the jurisdiction or authority of the arbitration panel or its decision. Increases in rates of compensation [or other benefits may be] awarded [retroactively] to the commencement of [any period(s) in dispute,] any other statute or charter provisions to the contrary notwithstanding. *At any time the parties, by stipulation, may amend or modify an award of arbitration."* (Emphasis supplied.)

While the decisions relied on by the parties are instructive, they must be considered with reference to the fact that under the public employment relations act and 1969 PA 312, the members of plaintiff Local 502-M have no right to strike. See MCL 423.202; MSA 17.455(2). In lieu of the right to strike, the union is entitled to resort to the compulsory arbitration procedure of MCL 423.240; MSA 17.455(40).

In *Kaufman & Broad Home Systems, Inc v International Brotherhood of Firemen & Oilers, AFL-CIO,* 607 F2d 1104 (CA 5, 1979), the Fifth Circuit held that, under a duration of agreement clause in that contract, notice to terminate or to modify the contract acted to prevent automatic extension of the contract into the future. The pertinent contract language in *Kaufman* stated:

"Section 1. This Agreement shall become effective as of November 13, 1967, and shall remain in effect until November 12, 1970, and from year to year thereafter with the provision that should either party desire to terminate this Agreement or to modify any part thereof, it shall notify the other party in writing no less than sixty (60) nor more than seventy-five (75) days

prior to the end of said three-year period or the end of any subsequent one-year period that the party giving such notice desires either to terminate the Agreement at the end of such period or to negotiate amendments or changes of the terms or provisions thereof." *Kaufman, supra,* p 1106.

The contract between the union and the employer in *Kaufman* also contained a no-strike clause.

The *Kaufman* court found the duration of agreement clause to be unambiguous, although the court noted that there was no explicit statement in the contract of the effect of notice to terminate or modify the contract. 607 F2d 1109. That court also found that the effect of either notice to terminate or notice to modify was termination of the contract. *Id.* That court was particularly persuaded by the fact that the contract contained a no-strike clause, because in the face of the no-strike clause, if notice to modify did not operate as notice to terminate, the employer could indefinitely reject the union's offers without any fear of economic reprisal.

The *Kaufman* court distinguished the earlier case of *International Union of Operating Engineers v Dahlem Construction Co,* 193 F2d 470 (CA 6, 1951), on the grounds that in the *Dahlem* case, the duration of agreement clause explicitly stated that the agreement between the parties would remain in effect until a new agreement was reached.

Other cases which address the issue under the NLRA have held that, depending upon the language of the particular contract clause, notice of modification does not necessarily amount to notice of termination of a contract. *Cf. Motor Carriers Counsel of St Louis, Inc v Local Union No 600,* 486 F2d 650 (CA 8, 1973); see also *Nashville Newspa-*

*per Printing Pressmen's Union Local 50 v Newspaper Printing Corp,* 518 F2d 351 (CA 6, 1975).

We find three reasons for distinguishing *Kaufman* from the instant case. First, because of the compulsory arbitration procedure available to both parties herein, MCL 423.240; MSA 17.455(40), the policy considerations governing *Kaufman* are not present in the instant case. The compulsory arbitration procedure provided by 1969 PA 312 eliminates the danger that the union would be forced to operate under the terms of the old agreement *ad infinitum.* Second, the policy considerations governing a private employee's statutory right to strike under the NLRA are not present in the case at bar because public employees have no right to strike. MCL 423.202; MSA 17.455(2). Finally, the defendant's actions in providing written notice of termination in September of 1981 belies its contention that it believed that the contract terminated on November 30, 1979, the originally scheduled expiration date.

We hold that the trial court, in its findings of fact and conclusions of law, properly considered the language of the contract itself, the actions of the parties, and the evidence presented in finding that the agreement did not terminate until the county provided notice of termination in September of 1981. The judgment of the trial court is affirmed.

Finally, we hold that the trial court was not required to consider the subsequent 1969 PA 312 arbitration award (the Senter Award) in resolving this dispute.

At the show cause hearing, the county conceded that, in the five years of litigation that preceded the show cause hearing, it failed to properly object to the Haber Award of COLA benefits to retirees

on the ground that such award was not a mandatory subject of bargaining. That failure to object was the basis of this Court's prior decision affirming the trial court's enforcement of the Haber Award. *National Union of Police Officers v Wayne County Bd of Comm'rs* (Docket No. 78-4141, decided February 25, 1980 [unreported]). The sole issue at the show cause hearing was whether or not the county should be held in contempt for failing to comply with the terms of the Haber Award in accordance with this Court's and the lower court's orders that it ought to so comply.

The county conceded that compliance was necessary. However, it did contest certain former employees' status as retirees as well as the effect of the "Duration of Agreement" clause on its duty to pay. As noted earlier, the trial court properly found after hearing the evidence presented by the parties that the duration of agreement clause and the actions of the parties had the effect of extending the agreement which resulted from the Haber Award until December 1, 1981. As a result, the trial court held that the county was liable for COLA benefits to retirees through the period ending December 1, 1981. The subsequent resolution of the issue of whether or not the county had a duty to bargain on the issue of COLA benefits for retirees pursuant to the Senter Award has no effect on the court's determination of the issue herein.

Affirmed.